UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | CR-05-95-B-W |
| | ) | |
| ROGER DALE BATES, | ) | |
| | ) | |
| Defendant. | ) | |

**ORDER ON DEFENDANT'S MOTION TO EXCLUDE**

Having pleaded guilty to possession of child pornography, Roger Dale Bates seeks to exclude evidence of a prior conviction in 1990 for Indecent Assault and Battery on a Child Under Fourteen, because he claims his waiver of counsel violated the Sixth Amendment. This Court concludes that Mr. Bates has not sustained his burden to establish that the earlier conviction is constitutionally suspect.

**I. STATEMENT OF FACTS**

　**A.　The 2006 Sentencing Impact of the 1990 Indecent Assault Conviction**

On April 7, 2006, the Defendant pleaded guilty to one count of possession of child pornography, a violation of 18 U.S.C. § 2252A(a)(5)(B). The Presentence Investigation Report (PSR) revealed that on February 6, 1990, Mr. Bates pleaded guilty in Clinton District Court, commonwealth of Massachusetts to Indecent Assault and Battery on a Child, a violation of Mass. Gen. L. ch. 265, § 13B, and received one-year probation.[1] *PSR* at 7; *Def.'s Mot. To Exclude*

---

[1] The parties have skirmished on the marginally relevant question of whether the penalty for indecent assault and battery on a child is 10 or 2 ½ years. For certain crimes, including indecent assault and battery on a child, Massachusetts has a two-tiered sentencing system. The state statute provided: "Whoever commits an indecent assault and battery on a child under the age of fourteen shall be punished by imprisonment in the state prison for not more than ten years, or by imprisonment in a jail or house of correction for not more than two and one-half years…." Mass. Gen. L. ch. 265, § 13B. The First Circuit resolved this issue in *United States v. Moore*, 286 F.3d 47, 49 (1st Cir. 2002). For federal sentencing purposes, the maximum term for the indecent assault conviction is 10 years.

*Prior Conviction* (*Def.'s Mot.*) at 1 (Docket # 40).  Under 18 U.S.C. § 2252A(b)(2), if this conviction counts, Defendant faces a statutorily enhanced prison term: instead of a 10 year maximum, he is subject to a 10 year minimum and a 20 year maximum.[2]  But for the prior conviction, Defendant would face a guideline range for imprisonment of 63 to 78 months.  The Defendant does not dispute that the 1990 conviction was for a crime that would properly enhance his sentence under § 2252A; he also concedes that his waiver of counsel was voluntary.  The sole focus of his attack is whether his 1990 waiver of counsel was "knowing."

### B. The Indecent Assault Court Documents

The Defendant produced the court documents from the 1990 indecent assault conviction. *Def.'s Mot. Ex.* 1-5.  The documents establish that on January 16, 1990, the commonwealth initiated a criminal complaint against Mr. Bates, alleging that he committed an indecent assault and battery upon a child under the age of 14 years. *Id. Ex.* 4.  Mr. Bates was taken into custody at 9:00 a.m. on January 16, 1990. *Id. Ex.* 1.  The docket sheet states that he was arraigned on January 23, 1990 before Judge Toomey and entered a plea of "not guilty."[3]  *Id. Ex.* 3.  Although there is some ambiguity as to when he was advised of his right to counsel, the box for "Advised

---

[2] 18 U.S.C. § 2252A(a)(5)(B) criminalizes the possession of "any . . . videotape . . . that contains an image of child pornography…."  For persons who violate § 2252A(a)(5)(B), the statute provides a term of imprisonment of "not more than 10 years…."  18 U.S.C. § 2252A(b)(2).  However, if the person "has a prior conviction . . . under the laws of any State relating to aggravated sexual abuse, sexual abuse, or abusive sexual conduct involving a minor…, [he] shall be . . . imprisoned for not less than 10 years nor more than 20 years." *Id.*

[3] The record is unclear as to the exact sequence of events.  Mr. Bates was arrested on January 16, 1990.  The next entry in the docket is not until January 23, 1990, when he was arraigned, but there is no indication that he was held from January 16, 1990 to January 23, 1990.  This would have been contrary to longstanding Massachusetts law, which requires that an arrested defendant be brought before a court for arraignment as soon after arrest as reasonably possible.  Mass. R. Crim P. 7(a) ("A defendant who has been arrested shall be brought before a court if then in session, and if not, at its next session."); *Commonwealth v. Dubois*, 230 N.E.2d 906, 907-08 (Mass. 1967); *Keefe v. Hart*, 100 N.E. 558, 559 (Mass. 1913). January 16, 1990 was a Tuesday and there would have been no apparent basis for keeping Mr. Bates incarcerated until January 23, 1990, the following Tuesday.  Further, when he was sentenced, there was no mention of credit for time served.  More likely, on January 16, 1990, he was brought before a magistrate, who appointed counsel for the bail hearing and released him to bail.  But, on this point, the record is silent.

2

of right to counsel" is checked.[4]  Another form confirms that on January 23, 1990, an attorney entered an appearance for Mr. Bates, but the bottom of the form has the words "–Bail Only –." *Id. Ex*. 2.  The top of the docket sheet has a place for the name of the defendant's attorney and it is filled in:  "To Secure Own Counsel." *Id. Ex*. 3.  Mr. Bates was released on $200.00 cash bail. *Id.*

On February 6, 1990, he returned to court and again appeared before Judge Toomey. *Id.* The documents contain a waiver form signed by Mr. Bates.  The form reflects that he waived his right to counsel and his right to jury trial.[5]  *Id. Ex*. 5.  The docket sheet states that he was advised of his right to a jury trial and the box for jury trial is marked:  "waives." *Id. Ex*. 3.  It also reflects that he entered a plea of "G" and that he was sentenced to probation until February 1, 1991 with conditions prohibiting contact. *Id.*  Finally, the docket sheet states that he was discharged from probation by Judge Brennan on February 1, 1991. *Id.*

### C.  The October 18, 2006 Hearing

The Court held a hearing on Defendant's motion on October 18, 2006.  In addition to the admitted exhibits, the evidence included Mr. Bates' own testimony.  Defendant testified that after his discharge from the Army in 1971, he began drinking heavily and, by 1990, he was drinking heavily every day.  During the time he was charged and pleaded guilty to indecent

---

[4] In the box for "Attorney Name," there are three smaller boxes:  waived, retained, and assigned.  None is checked. To the right of the three boxes, the following appears:  "To Secure Own Counsel."

Below this box, there is a place for additional docket entries.  Directly above the checkmark for "advised of right to counsel" is a box for:  "Arraigned before" and Judge Toomey's name is written.  Directly to the left of the "arraigned before" box is a rectangular box with space for writing and the date – January 23, 1990 – is written.  At the bottom of the rectangular box the date – February 6, 1990 – appears, directly beside the box for waiver of jury trial.  Defendant argues that this indicates that he was not advised of his right to counsel at the arraignment, but rather when he entered his guilty plea and was sentenced.

[5] The waiver of counsel form states:  "I, the above named defendant, have been informed of my right to have a lawyer represent me at every stage of the proceedings in this case, and that if I cannot afford to hire my own lawyer, this Court will assign the Committee for Public Counsel Services to provide representation for me.  KNOWING THAT I HAVE A RIGHT TO HAVE A LAWYER REPRESENT ME, I NEVERTHELESS ELECT TO PROCEED IN THIS MATTER WITHOUT A LAWYER AND WAIVE MY RIGHT TO SUCH A LAWYER." *Def.'s Mot. to Exclude Ex*. 5.

assault, he was drinking as much as a case of beer per day plus a fifth of whiskey. He would begin drinking anywhere from 8:00 a.m. to 1:00 p.m. or "whenever the urge hit [him]." When asked about going to court for the indecent assault charge, he testified that he remembered the court appearance "[v]aguely, very vaguely, because I was drinking before I went to court on that too."

### D. Roger Dale Bates: Background up to February 1990[6]

Now fifty-six years old, Roger Dale Bates was born in Hartland, Maine and, for a time, attended Brewer High School.[7] He left high school during the tenth grade due to "problems with the principal," but earned his GED on September 24, 1971. Mr. Bates joined the United States Army in 1967. While in the Army in the United States and Korea, he was assigned to the Arms Room, where he was responsible for inventory. He tried and failed as a helicopter mechanic and attributes this failure to substance abuse. He was found drunk while on duty and received a demotion to E-4 and a general discharge under honorable conditions in 1971.

After the service, he was employed in various jobs and became a certified mechanic in the late 1980s. He was fired for drinking and ended up as a salvage mechanic and wrecker driver in 1990. As of February 1990, Defendant had been twice married and once divorced. The report for the indecent assault reveals that he was arrested at a hotel in Leominster, Massachusetts and that he was married, but separated at the time. *Def.'s Mot. Ex.* 1.

### E. Exposure to the Criminal Justice System up to February 1990

Defendant's first brush with the law occurred in 1969, when he was 19. He was arrested and charged with auto larceny and statutory burglary. *PSR* at 10. The case was pending in

---

[6] The Court relates Defendant's background up to the date he entered the plea in February 1990. His subsequent activity is not relevant to the Court's analysis in this case.

[7] This recitation comes primarily from the PSR, which the parties agreed the Court may use to rule on this motion, and from his testimony before the Court on October 18, 2006.

4

General District Court for Williamsburg, Virginia. *Id.* The PSR reflects an "unknown date and disposition." *Id.* At age 25, he was arrested on June 22, 1985, this time for terrorizing; on July 25, 1985, the case was dismissed in the state of Maine District Court. *Id.*

On Christmas Eve, 1989, when he was 39 years old, he was arrested and charged with disorderly conduct. *PSR* at 6. The charge, a violation of Mass. Gen. L. ch. 272, § 53, carried a maximum penalty of 6 months in prison and a maximum fine of $200.00. Defendant was arraigned in Clinton District Court on December 29, 1989 before Judge Fallon and was advised of his right to counsel and his right to a jury trial. The Court assigned an attorney. He was released on $200.00 bail and after the case was continued twice, it ended up before Judge Toomey on February 6, 1990, the same day he pleaded guilty to, and was sentenced on, the indecent assault charge. The docket reflects that he entered a guilty plea to the disorderly conduct and the charge was "filed."

## II. DISCUSSION

The Government and the Defendant present markedly different views of the significance of the court documents. The Government sees nothing unusual about the course of the indecent assault charge through the Massachusetts court system, from arraignment, bail, waiver of counsel and jury trial, to plea and sentencing, and no indication that Mr. Bates was deprived of his Sixth Amendment right to counsel, particularly in light of his signed waiver.

Defendant, on the other hand, points out that the only appointed counsel was exclusively for bail purposes. Even though he agrees that the signed waiver of counsel form establishes that he voluntarily waived the right to counsel when he entered his guilty plea, he notes that the waiver must also be "knowing and intelligent," which is satisfied when the accused is informed of the "nature of the charges against him" and "the range of allowable punishments attendant

5

upon the entry of a guilty plea." *Iowa v. Tovar*, 541 U.S. 77, 81 (2004). He contends nothing in the court documents confirms that he was ever informed about the nature of the charge or the range of potential penalties. *Def.'s Mot* at 2. According to Defendant, this lack of documentation is fatal because a record that is silent on the issue of waiver of counsel is presumed invalid. *Id.* at 6 (citing *Burgett v. Texas*, 389 U.S. 109, 114-15 (1967)).

### A. The Right to Counsel

The Sixth Amendment right to counsel for an accused who faces incarceration attaches at "all critical stages of the criminal process," including the entry of a guilty plea.[8] *Tovar*, 541 U.S. at 80-81; *United States v. Frechette*, 456 F.3d 1, 12 (1st Cir. 2006). The right to counsel may be waived. *Tovar*, 541 U.S. at 81; *Frechette*, 456 F.3d at 12. However, the waiver must be a "'knowing intelligent ac[t] done with sufficient awareness of the relevant circumstances.'" *Frechette*, 456 F.3d at 12, (quoting *Tovar*, 541 U.S. at 81) (citation omitted). "The constitutional requirement is satisfied when the trial court informs the accused of the nature of the charges against him, of his right to be counseled regarding his plea, and of the range of allowable punishments attendant upon the entry of a guilty plea." *Frechette*, 456 F.3d at 12 (quoting *Tovar*, 397 U.S. at 81). The defendant "bears the burdens of production and persuasion to show that he did not knowingly and intelligently waive the right to counsel in the predicate [offense]."[9] *Frechette*, 456 F.3d at 12-13.

---

[8] Because the indecent assault charge was a felony, Mr. Bates had a Sixth Amendment right to counsel even though his sentence was only probation. *Compare Gideon v. Wainwright*, 372 U.S. 335, 339-45 (1963) *with United States v. Perez-Macias*, 335 F.3d 421, 427-28 (5th Cir. 2003) (concluding the right to counsel does not attach to a misdemeanor, where the defendant was sentenced only to probation); *United States v. Pollard*, 389 F.3d 101, 105 (4th Cir. 2004).

[9] *Frechette* addressed a misdemeanor domestic violence conviction, which is covered by the specific statutory provision, 18 U.S.C. § 921(a)(33)(B)(i)(I). *Frechette*, 456 F.3d at 12-14. This statute requires that the person convicted of a misdemeanor crime of domestic violence, must have either have been "represented by counsel in the case, or knowingly and intelligently waived the right to counsel." 18 U.S.C. § 921(a)(33)(B)(i)(I). The provision is consistent with constitutional requirements regarding the right to counsel for felonies, such as indecent assault and battery upon a child.

In *Tovar*, the Supreme Court noted that the determination as to whether a defendant has knowingly and voluntarily waived the right to counsel is "case specific," involving such factors as "the defendant's education or sophistication, the complex or easily grasped nature of the charge, and the stage of the proceeding." *Tovar*, 541 U.S. at 88. In addition, the court may consider the defendant's "prior experience with the criminal justice system as relevant to the question whether he knowingly waived constitutional rights." *Parke v. Raley*, 506 U.S. 20, 37 (1992). The Court will address each factor.

### 1. Education, Sophistication, and Prior Exposure to the Criminal Justice System

Although not well-educated in 1990, Mr. Bates had attained a GED, had managed an Arms Storage Room in the military, and had been certified as a mechanic. There is no evidence he was unable to read, write, or generally understand court proceedings. His previous exposures to the court system in Virginia and Maine were apparently successful; there is no indication that the Virginia charge resulted in a conviction and the Maine terrorizing charge was dismissed.

Moreover, when he was arrested on the indecent assault charge on January 16, 1990, there was a disorderly conduct charge pending against the Defendant in the Clinton District Court for which he had received appointed counsel. While awaiting disposition of the disorderly conduct charge, he went to the same court for arraignment on the much more serious charge of indecent assault and battery against a child. Since he had just previously been granted the right to appointed counsel for the disorderly conduct charge, it is logical that he was aware of his right to counsel for the indecent assault charge.

Finally, he pleaded guilty and was sentenced at the Clinton District Court to both charges on February 6, 1990. The court records confirm that he was represented by counsel on the

disorderly conduct charge on February 6, 1990. It is difficult to conclude that he was aware of his Sixth Amendment rights for one charge, but not the other.

### 2. The Nature of the Charge

Mr. Bates was charged with violating chapter 265, § 13B of the Massachusetts criminal law. The law provided: "Whoever commits an indecent assault and battery on a child under the age of fourteen shall be punished by imprisonment in the state prison for not more than ten years, or by imprisonment in a jail or house of correction for not more than two and one-half years…." The charge is virtually self-explanatory. The age of the victim is "an essential element" of the offense. *Commonwealth v. Rockwood*, 538 N.E.2d 40, 42 (Mass. App. Ct. 1989). The commonwealth must also demonstrate that "the defendant committed an intentional, unprivileged, and indecent touching of the victim." *Commonwealth v. Taylor*, 733 N.E.2d 584, 585 (Mass. App. Ct. 2000). In his October 18, 2006 testimony, Defendant made no claim that there was something about the nature of the indecent assault charge he did not understand that led him to plead guilty. There is nothing esoteric or complex about a charge of indecent assault and, absent evidence to the contrary, the Court concludes the Defendant could and did understand the nature of the charge to which he pleaded guilty.

### 3. The Stage of the Proceeding

Regarding the stage of the proceeding, it appears Mr. Bates was accorded the right to counsel at the bail hearing on the indecent assault charge and further that he was advised of his right to counsel at the arraignment. After he informed Judge Toomey that he intended to retain his own lawyer, the next stage of the proceeding was the entry of his guilty plea and sentencing. Here, the record again confirms that he was advised of his right to counsel and waived it. Thus, the record of this criminal proceeding establishes that Mr. Bates was granted a limited right to

counsel for purposes of the bail hearing, was informed of his right to counsel at the arraignment and at the plea, and affirmatively waived his right to counsel at the plea. This is more than sufficient to satisfy Sixth Amendment requirements.

### B. Presumption of Regularity

A "presumption of regularity" attaches to a final judgment, "even when the question is waiver of constitutional rights." *Parke,* 506 U.S. at 29; *United States v. Sanchez*, 354 F.3d 70, 82 (1st Cir. 2004). Once the government "establishes the existence of a prior conviction, the burden shifts to the defendant to establish that the conviction is constitutionally infirm or otherwise inappropriate for consideration." *Sanchez*, 354 F.3d at 81; *United States v. Gray*, 177 F.3d 86, 89 (1st Cir. 1999).

This presumption attaches to the Massachusetts District Court's processing of the criminal charge against Defendant in 1990.[10] Under Rule 12 of the Massachusetts Criminal Rules, before accepting a guilty plea, the state court was, in 1990, required first to determine "that the plea is made voluntarily with an understanding of the nature of the charge and the consequences of the plea." Mass. R. Crim. P. 12(a)(2).[11] In addition, the trial court was mandated to advise a defendant upon taking a plea of guilty: 1) "that by his plea of guilty. . . he waives his right to trial with or without a jury, his right to confrontation of witnesses, and his

---

[10] Defendant cites *Burgett* for the proposition that if the state court record is silent on the issue of waiver, there is a presumption the defendant was denied counsel. *Burgett*, 389 U.S. at 114-15. In *Burgett*, the state presented a certified copy of a Tennessee conviction that stated: "Came the Assistant Attorney-General for the State and the Defendant in proper person and without Counsel." *Id.* at 112. There was "no indication in the record that counsel had been waived." *Id. Burgett* stated: "In this case the certified records of the Tennessee conviction on their face raise a presumption that petitioner was denied his right to counsel in the Tennessee proceeding, and therefore that his conviction was void. Presuming waiver of counsel from a silent record is impermissible." *Id.* at 114-15. After *Burgett*, the Supreme Court in *Parke* affirmed the "'presumption of regularity' that attaches to final judgments, even when the question is waiver of constitutional rights." *Parke*, 506 U.S. at 29. *Parke* also noted that when the state conviction was entered at trial in *Burgett*, "state criminal defendants' federal constitutional right to counsel had not yet been recognized, and so it was reasonable to presume that the defendant had not waived a right he did not possess." *Id.* at 31. Consistent with *Parke*, the presumption of regularity does obtain here and, in any event, the record is not silent about waiver of counsel. Not only do the docket entries reflect that the Defendant was advised of his right to counsel, but the record also contains a waiver of the right signed by the Defendant. *Burgett* is inapposite.

[11] The Massachusetts version of federal rule 11 is found in Rule 12. Mass. R. Crim. P. 12.

9

privilege against self-incrimination"; 2) "where appropriate, of the maximum possible sentence on the charge…." Mass. R. Crim. P. 12(c)(3)(A), (B).[12]

The Defendant challenges the presumption on two grounds: first, he states that he was likely intoxicated on February 6, 1990, when he entered his plea of guilty and received his sentence and, second, he contends that the court records fail to reflect that he was informed of the nature of the charges and the potential range of penalties. The Court will discuss each point in turn.

### 1. Defendant's Competence on February 6, 1990

During his October 18, 2006 testimony, Defendant testified that he had been drinking before he went to court on February 6, 1990. He implied that he may even have been intoxicated on February 6, 1990 when he entered his guilty plea and was sentenced. Having had the opportunity to assess the Defendant's credibility, the Court does not accept his recollection of his compromised competency on February 6, 1990. First, his memory of the court proceeding was extremely vague. Second, he has a powerful incentive to deflect the 1990 conviction. Finally, and most significantly, to accept Defendant's recollection would require the Court to conclude that the district judge in Massachusetts improperly accepted a guilty plea and then sentenced a man who was rendered incompetent due to intoxication.

As noted, Rule 12(a)(2) provided that a trial court "shall not accept a plea without first determining that the plea is made voluntarily with an understanding of the nature of the charge and the consequences of the plea." Mass. R. Crim. P. 12(a)(2). It had long been the law in the commonwealth of Massachusetts that for a defendant to plead guilty, he must have "a rational as

---

[12] It is true that the version of the rule as it existed in 1990 stated that the defendant was to be informed of the maximum sentence only "when appropriate." However, the Reporter's Note confirms that "Pursuant to subdivision (c)(3)(B), the defendant is to be informed of the maximum possible sentence and the mandatory minimum, if any." *Reporter's Note.*

10

well as factual understanding of the proceedings against him." *Commonwealth v. Blackstone*, 472 N.E.2d 1370, 1371 n.1 (Mass. App. Ct. 1985); *Commonwealth v. Vailes*, 275 N.E.2d 893, 895 (Mass. 1971). In fact, in Massachusetts, "the competence necessary to plead guilty is similar to that for standing trial." *Commonwealth v. Perry*, 450 N.E.2d 615, 617 (Mass. 1983). Mr. Bates' vague recollection of the court appearance on February 6, 1990 does not sustain his burden, particularly in view of the presumption of regularity that properly attaches to the district court proceeding.

### 2. The Record

Although there are some gaps in the docket entries, the weight of the evidence suggests that Defendant was arrested on January 16, 1990, brought before a magistrate soon thereafter, assigned bail counsel, and released to bail. *See fn* 3. He was arraigned on January 23, 1990, and was informed of his right to counsel. He told Judge Toomey that he intended to secure his own counsel. He returned to court on February 6, 1990. He was represented by counsel on the pending disorderly conduct charge, which was heard before Judge Toomey and "filed." He was not represented by counsel on the indecent assault charge. He signed a waiver of counsel and waiver of jury trial form and entered a plea of guilty. He was sentenced to one year probation and one year later on February 1, 1991, he was discharged from probation by Judge Brennan.

It is true that there is no express indication that Defendant was informed of the nature of the charge and the range of penalties. However, the Criminal Complaint describes the charge as "an indecent assault and battery upon a child under the age of 14 years, in violation of G.L. c. 265, s. 13B." *Def.'s Mot*. *Ex*. 4. This criminal charge is hardly difficult to understand and there is no basis for the Court to conclude that it was never communicated to Defendant or that he

failed to understand it, especially given the mandate of the criminal rules. Mass. R. Crim. P. 7, 12.

The criminal complaint also sets forth the following: "PENALTY: Imprisonment in State Prison for NMT 10 years or in jail or House of Correction for NMT 2 ½ years." *Id.* Again, given the mandate of the criminal rules, there is no basis to conclude the potential range of penalties was never communicated to Defendant.[13] Mass. R. Crim. P. 12.

### C. The Sentencing Outcome

In determining whether the accused's waiver of counsel was "knowing," a court may also review whether the prior uncounseled conviction resulted in a favorable sentence. *See Gray*, 177 F.3d at 91 (concluding no infirmity when defendant was offered a "sweet deal"); *United States v. Wicks*, 955 F.2d 964, 979 (10th Cir. 1993).

When Defendant arrived at the Clinton Courthouse on February 6, 1990, he faced two criminal charges: disorderly conduct and indecent assault and battery on a child under the age of 14. The disorderly conduct charge presented a maximum term of imprisonment of six months and the indecent assault charge presented a maximum term of imprisonment of ten years and at the district court level two and one-half years. By the time he left the courthouse on February 6,

---

[13] Defendant contends that even if the Court were to conclude that the maximum range of jail time had been communicated to him, there is no indication that he was informed that the charge carried the potential of a lifetime of probationary supervision. But, it should be noted that the potential for a lifetime of probation for this offense arose from a general statutory provision in Massachusetts that grants a wide range of discretion to the sentencing judge to fix the term of any probation. The authority to place a convicted defendant on probation is found in Mass. Gen. L. ch. 276, § 87, which authorizes a judge to "place on probation . . . any person before it charged with an offense or a crime for such time and upon such conditions as it deems proper . . . after a finding or verdict of guilty." This statutory provision has been interpreted as granting Massachusetts judges "great latitude" in imposing conditions of probation. *Commonwealth v. LaPointe,* 759 N.E.2d 294, 298 (Mass. 2001) (quoting *Commonwealth v. Pike*, 701 N.E.2d 951, 959 (Mass. 1998)). Defendant was not subject to the later enacted statutory provision in Massachusetts law that now provides that persons convicted of this offense may "in addition to the term of imprisonment authorized . . . be punished by a term of community parole supervision for life to be served under the jurisdiction of the parole board." Mass. Gen. L. ch. 265, § 45 (1999); *see LaPointe*, 759 N.E.2d at 300, n.4. Even if it is true that there is no indication that Defendant was informed of the potential for a lifetime of probation, it is also true that there is no indication he was not so informed. As there is a presumption of regularity and the burden rests on Defendant, an absence of proof does not sustain Defendant's burden.

1990, the disorderly conduct charge had been "filed" and although he had admitted the indecent assault charge, he received no jail time and only a one-year probated sentence. These results fit well-within the First Circuit's description of a "sweet deal." *See Gray*, 177 F.3d at 91. This is especially true of the indecent assault charge, a manifestly serious criminal accusation.[14]

### D. Appeal or Collateral Attack

There is some circuit authority that, in considering whether the defendant knowingly waived his right to counsel, the court may consider whether the defendant attempted to challenge the conviction either by appeal or collateral review. *See Gray*, 177 F.3d at 91. Here, there is no evidence Defendant ever sought to appeal or collaterally attack his conviction and sentence in the indecent assault case.[15]

## III. CONCLUSION

The Court readily concludes that Defendant has not sustained his burden of proof to demonstrate that his Sixth Amendment right to counsel was violated in the Massachusetts criminal proceedings leading to his February 6, 1990 conviction for indecent assault and battery on a child under the age of 14. The court documents confirm that he was assigned bail counsel, was informed on arraignment of his right to counsel and elected to secure his own counsel, and expressly waived the right to counsel at the guilty plea and sentencing. The evidence does not establish that he was incompetent by education level, mental capacity, or prior and concurrent

---

[14] Although it is often unproductive to compare criminal cases, to the extent the reported cases reflect sentences imposed for this or similar crimes, the sentences are more punitive. *LaPointe* involved an indecent assault and battery on a person who had attained age fourteen and the defendant in that case was sentenced to thirty-six to fifty-four months in state prison, twenty-four months to be served, and the judge suspended the balance of the sentence for twenty years under probation supervision. *LaPointe*, 759 N.E.2d at 296; *see also United States v. Goetchius*, 369 F. Supp. 2d 13, 15 (D. Me. 2005) (Defendant convicted of two charges of indecent assault and battery of a child under the age of 14 sentenced to two years incarceration on one charge and no incarceration and five years probation with special conditions on the other charge).

[15] The Court does not place much weight on this factor in this case. Defendant received a lenient sentence and, after he served his one-year probation, he had no particular motivation to challenge the 1990 conviction until this federal charge was brought.

experience with the criminal justice system to enter a plea of guilty to the offense. His guilty plea resulted in an extremely favorable sentence and Defendant never later sought to challenge the conviction and sentence. The Court DENIES Defendant's Motion to Exclude Prior Conviction (Docket # 40); the Court will count the Defendant's 1990 conviction for indecent assault and battery on a child under the age of 14 and will sentence him accordingly.

    SO ORDERED.

                                                <u>/s/ John A. Woodcock, Jr.</u>
                                                JOHN A. WOODCOCK, JR.
                                                UNITED STATES DISTRICT JUDGE

Dated this 6th day of November, 2006